Filed 4/15/13  In re Nathan P. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re NATHAN P., a Person Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>                v.<br><br>SARAH S. et al.,<br><br>        Defendants and Appellants. | G047318<br><br>(Super. Ct. No. DP022272)<br><br>O P I N I O N |

         Appeals from an order of the Superior Court of Orange County, Gary G. Bischoff, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Donna P. Chirco, under appointment by the Court of Appeal for Defendant and Appellant Sarah S.

Rich Pfeiffer, under appointment by the Court of Appeal, for Defendant and Appellant Jeff P.

Nicholas S. Chrisos, County Counsel, Karen L. Christensen and Aurelio Torre, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for the Minor.

\*     \*     \*

In this juvenile dependency matter, the mother contends, and the father joins her contentions, the juvenile court erred in refusing to provide her a full hearing after she petitioned for the court to change its order to set a hearing to terminate parental rights. We find the juvenile court did not abuse its discretion when it denied the mother a hearing on her petition and we affirm the order terminating parental rights.

I

FACTS

Nathan P. was born in February 2012. He was admitted to Orangewood Children and Family Center First Step directly following his release from the hospital after his birth. His mother, Sarah S., used both crack cocaine and marijuana during the first trimester of her pregnancy with Nathan.

After his mother and Jeff P., the father, were arrested for child cruelty, Nathan's three half siblings were brought into protective custody in August 2010 and declared dependants of the Orange County Juvenile Court a few months later. In May 2012, Nathan was also declared a dependant of the juvenile court.

Nathan's mother registered as a controlled substance offender in 2011. She was arrested in 2006 and five times in 2011 for various drug offenses. Also in 2011, and prior to the child cruelty arrest, she was arrested for burglary and theft charges.

Nathan's father has a history of drug abuse since at least 1984. A list of his criminal history consumes more than 11 pages of the clerk's transcript.

In its May 2, 2012 report, Orange County Social Services Agency (SSA) stated: "Due to the mother's participation in treatment and the mother giving birth to a child free of substances, the undersigned had recommended the mother receive reunification services but cautioned the mother that Welfare and Institutions Code 361.5 applied to her. She was advised that she was high risk due to her history of substance abuse and used during this pregnancy. She was advised to not use drugs and not miss any part of her treatment. [¶] The mother missed a drug test on March 17, 2012 and subsequently provided Perinatal with a diluted sample for testing. This is considered a positive test. Due to the mother's failure to maintain her sobriety, show her ability to consistently participate in her case plan, and the application of Welfare and Institutions Code 361.5, the undersigned is respectfully changing the recommendation to No Reunification Services for the child's mother and requests that the matter be calendared for a Permanent Plan Hearing on August 31, 2012." (All statutory references are to the Welfare and Institutions Code.)

At a May 2, 2012 hearing, the court found pursuant to section 361.5, subdivisions (b)(10), (13) that reunification services need not be provided to the parents. A hearing under section 366.26 was set.

The mother filed a request for a hearing pursuant to section 388. Her petition requested a change of the May 2, 2012 order of the juvenile court that the child was not to be placed with the mother, that no reunification services would be offered and that the matter would be set for a hearing under section 366.26. The mother's declaration in support of her petition stated where she lived, that she was employed 22 hours a week at the rate of $9 an hour, attends a prenatal program which involves drug testing, sees a psychiatrist every three months, that she had completed several programs and that her

3

depression is in remission. She declared she had consistently visited Nathan and provides him a sense of belonging by giving him attention.

SSA's report to the court stated: "Nathan was placed with the prospective adoptive parents when he was just two days old. The adoptive family has had a relationship with Nathan's birth family since 2009 when they met his mother at church prior to her giving birth to her third of four children. The adoptive family began babysitting Nathan's siblings and getting to know both Nathan's mother and great-grandmother. Nathan's mother would often leave her children with the prospective adoptive family overnight. For nearly two months in 2010 the mother left all three of Nathan's older siblings with the prospective adoptive family and they cared for them full time. The prospective adoptive parents know Nathan's siblings well and it is clear they care deeply for them. The prospective adoptive mother was present for Nathan's birth and he was placed in their home when he was released from the hospital. [¶] The prospective adoptive parents appear to have a strong support network with friends and family members. The prospective adoptive parents are reportedly in good health. The prospective adoptive parents report they have adequate financial resources to provide for Nathan's needs and they have been doing so since his birth. The prospective adoptive father retired early and works part time while the prospective adoptive mother stays home so daycare is not required."

On August 22, 2012, the juvenile court denied the mother's request for a hearing of her motion made pursuant to section 388, stating: "There has not been a change in circumstances, and in addition, the mother has failed to carry her burden to show that the requested relief would be in the best interest of the child."

At the conclusion of the section 366.26 hearing, the juvenile court found by clear and convincing evidence that Nathan is adoptable. Prior to terminating parental rights, the court found the mother carried her burden of showing she had regular and consistent visitation with Nathan. With regard to whether or not the mother/child

4

relationship benefits Nathan to the extent that such benefit outweighs the benefit he would have through permanency, the court stated: "And unfortunately, in this circumstance, there's been virtually no evidence to support that proposition. [¶] It's clear that the mother visits with the child. It's clear that most of the time she enjoys those visits and interacts with the child." The court terminated the parental rights of both parents.

II

DISCUSSION

Both parents contend the juvenile court erred in denying the mother a hearing on her request for a changed order under section 388. A juvenile court's determination to deny a section 388 petition without a hearing is reviewed for abuse of discretion, and a summary denial of a hearing will be upheld unless it can be determined from the record the denial exceeded the bounds of reason. (*In re Brittany K.* (2005) 127 Cal.App.4th 1497, 1505.)

No doubt, the mother did make some changes in her life, but the import of her changes is moderated when one considers she missed a mid-March drug test and submitted a diluted sample a few months later. She did manage to secure part-time employment, indicating she was going in the right direction. In addition to evidence Nathan had spent his entire life in a stable and loving home with his prospective adoptive parents, the juvenile court also had before it evidence the mother had a history of cruelty to her other three children, that she spent years using illegal drugs, including while she was pregnant with Nathan, and that she accumulated a significant arrest record. While she faithfully visited Nathan, her contacts with him consisted of weekly monitored visits, and she never provided him full-time care, not even for a single night.

A pleading that alleges only changing rather than fully changed circumstances promotes neither stability for the child nor the child's best interests. (*In re Carl R.* (2005) 128 Cal.App.4th 1051, 1072.) A petition under section 388 requires either

5

new evidence or changed circumstances, but it also requires a showing the requested change promotes a child's best interests. (*Cesar V. v. Superior Court* (2001) 91 Cal.App.4th 1023, 1036.) In light of the showing made in the mother's petition, even assuming everything she submitted is factually true, we cannot conclude the juvenile court abused its discretion when it deemed the mother's early attempts at change insufficient to warrant a full hearing on her section 388 petition. (*In re Baby Boy L.* (1994) 24 Cal.App.4th 596, 610.)

County counsel contends the father lacks standing to make claims regarding the mother's section 388 petition. Assuming he has standing, we note the arguments of both parents are essentially the same. One difference, however, is that the father contends the juvenile court disregarded the best interest factors discussed in *In re Kimberley F.* (1997) 56 Cal.App.4th 519.

"[T]he essence of a section 388 motion is that there has been a change of circumstances. Accordingly, the nature of the change, the ease by which the change could be brought about, and the reason the change was not made before bear on any such motion. [¶] Summarizing these factors: (1) the seriousness of the problem which led to the dependency, and the reason for any continuation of that problem; (2) the strength of relative bonds between the dependent children to *both* parent and caretakers; and (3) the degree to which the problem may be easily removed or ameliorated, and the degree to which it actually has been. While this list is not meant to be exhaustive, it does provide a reasoned and principled basis on which to evaluate a section 388 motion." (*In re Kimberley F.*, *supra*, 56 Cal.App.4th at pp. 531-532.)

We see no indication in the record before us to support the father's argument the juvenile court disregarded the law enunciated in *Kimberley F.* Nor has the father cited us to any evidence to support his claim the court did not consider these factors or even that the factors set forth in *Kimberly F.* control in cases where a parent is not receiving reunification services, where the focus shifts to the needs of the child for

6

permanency and stability.  (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317.)  Thus, even when assuming the father has standing to join in the mother's claims, the result would be no different.

III

DISPOSITION

The order of the juvenile court is affirmed.


MOORE, ACTING P. J.

WE CONCUR:


FYBEL, J.


THOMPSON, J.